UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KIMBERLEY J. DAVIS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>PORT ANGELES SCHOOL DISTRICT, et al.,<br><br>　　　　　　Defendants. | CASE NO. 3:20-cv-5448 BHS-SKV<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable S. Kate Vaughan, United States Magistrate Judge, Dkt. 60, Plaintiff Kimberly Davis's objections to the R&R, Dkt. 61, and Defendants Port Angeles School District, Amity Butler, and Patricia Reifenstahl's objections to the R&R, Dkt. 62.

**I.　　FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff is a certified special education teacher who began working for the District in August 2001. Dkt. 30, ¶ 2. She brings claims against the District, her former principal, Butler, and a paraprofessional assigned to Plaintiff's classroom, Reifenstahl, for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW Ch. 49.60. *See* Dkt. 1. She

alleges that Defendants engaged in sex discrimination and retaliation on account of her sexual orientation in violation of federal and state law.[1] *See id.*

The Court reincorporates by reference the thorough factual background presented in the R&R, *see* Dkt. 60 at 2–14, but provides an overview of the issues at hand. In 2010, Plaintiff began teaching first through third grade special education at Franklin Elementary School. Dkt. 1, ¶ 4.1. Butler was Plaintiff's school principal and supervisor, tasked with evaluating her performance on an annual basis. Dkt. 31, ¶ 5. Plaintiff received positive evaluations graded on a four-level scale (Level 1: Unsatisfactory, Level 2: Basic, Level 3: Proficient, or Level 4: Distinguished) up until the 2017–2018 school year. *Id.* ¶ 7; Dkt. 46-1 at 9–17.

At the beginning of the 2016–2017 school year, the District adopted the Styer-Fitzgerald curriculum ("Styer") for special education students in self-contained classrooms like Plaintiff's. Dkt. 31, ¶ 13. Styer required teachers to first complete an initial assessment of each student to determine whether the curriculum was appropriate for them. Dkt. 48 at 148:8–14. If so, teachers were expected to identify and work with each student on individualized academic goals and collect data on those goals in Styer curriculum notebooks. Dkt. 28 at 3. Defendants assert that Plaintiff failed to implement Styer in the 2016–2017 school year. *Id.*

---

[1] Plaintiff additionally asserted claims of negligent supervision and defamation but abandoned those claims. *See* Dkt. 53 at 3. The R&R thus only considered Plaintiff's Title VII and WLAD claims.

1          In September 2016, Butler called Plaintiff into her office to inform Plaintiff that
2  two students had reported seeing Plaintiff kissing her female partner, Tanya Pepper, in
3  the school parking lot. Dkt. 31, ¶ 12. Plaintiff alleges that Butler told her to "watch it,"
4  Dkt. 43 at 5, and Butler recalls telling Plaintiff "something to the effect of, 'sometimes
5  our community isn't as open-minded as we would like,'" Dkt. 31, ¶ 12. Plaintiff
6  perceived this as a warning to not be open or affectionate with her partner, Dkt. 57-1 at
7  53:25–56:7, and alleges that Butler's treatment of her changed to hostile and
8  unprofessional following this incident, Dkt. 1, ¶ 4.10. She alleges that Butler was openly
9  hostile to her and her partner at a Christmas party that school year and that Butler began
10 withholding resources and support. Dkt. 43 at 6–8. Plaintiff further alleges that also in
11 September 2016, Butler unilaterally assigned Reifenstahl as a paraprofessional to her
12 classroom and that Reifenstahl treated her with hostility. *See* Dkt. 57-1 at 72:20–73:24,
13 193:13–195:25. Butler rated Plaintiff's performance for the 2016–2017 school year as
14 Level 4: Distinguished. Dkt. 31, ¶ 15.
15         Plaintiff alleges that Butler's discriminatory conduct continued into the 2017–
16 2018 school year. She alleges the conduct included treating her and her partner in a rude
17 and disdainful manner at school functions, continuing to withhold resources from her,
18 and excluding her from paraprofessional evaluations, among others. *See* Dkt. 60 at 5–6.
19 Butler, on the other hand, asserts that Plaintiff's teaching performance deteriorated during
20 the 2017–2018 school year. She contends that Plaintiff again failed to implement the
21 Styer curriculum in her classroom and inconsistently recorded Styer data in the
22 designated notebooks, among other issues. *See* Dkt. 31, ¶¶ 20–21. Butler also received

reports from school employees regarding Plaintiff's teaching performance, *see, e.g.*, Dkt. 31, ¶ 16, and asked Plaintiff to work with a special education instructional coach for the District to improve her performance, Dkt. 44, ¶ 2. At the end of the 2017–2018 school year, Butler evaluated Plaintiff's performance as Level 2: Basic. Dkt. 31, ¶ 20. Plaintiff submitted a rebuttal to the evaluation but did not accuse Butler or anyone else of discrimination. Dkt. 31, ¶ 23; *see also* Dkt. 31-1 at 21–23.

Prior to the 2018–2019 school year, Plaintiff reviewed a checklist with the District's special education instructional coach, who confirmed that Plaintiff had implemented the requested changes and was ready for the school year. Dkt. 44, ¶ 2. When the school year commenced, Plaintiff alleges that Butler repeatedly instructed her to change her teaching and kept changing the requirements. Dkt. 43 at 16. Butler formally observed Plaintiff's teaching in September 2018 and December 2018 and asserts that she did not see Plaintiff using the Styer curriculum in the classroom. Dkt. 31, ¶ 24; Dkt. 47 at 183:20–184:3. Consequently, Butler placed Plaintiff on a two-year Plan of Improvement ("PIP") in January 2019. Dkt. 31, ¶ 24. The PIP required Plaintiff to provide weekly lesson plans to Butler, meet with Butler twice a month to discuss her progress, and use the Styer curriculum, among others. Dkt. 31-2. In April 2019, Plaintiff met with union personnel, including her union representative, to report that she was being discriminated against by Butler. Dkt. 57-1 at 87:16–88:13. Her union representative subsequently spoke with Butler about the complaint. *Id.*

In May 2019, a paraprofessional in Plaintiff's classroom, Carole Copeland, reported concerns about Plaintiff's teaching to Butler. Dkt. 31, ¶ 25. Copeland alleged

that before spring break, the Styer notebooks disappeared from Plaintiff's classroom, and when they returned, they contained new data entries that were backdated to September 2018. *Id*. Copeland further alleged that, sometime in May 2019, Plaintiff recorded behavioral data for a student the paraprofessional had been working with one-on-one which was inconsistent with the behavior she had witnessed. *Id.* ¶ 25. When Copeland told Plaintiff that she had not witnessed the recorded behavior, Plaintiff allowed her to change the data. *Id.*

Following Copeland's complaint, Butler consulted with the District's Human Resources director, Scott Harker, and removed the Styer notebooks from Plaintiff's classroom. Dkt. 1, ¶ 4.68; Dkt. 31, ¶ 26. After reviewing the notebooks, Butler noticed certain data had been recorded on dates when either Plaintiff and/or the student in question were not in school and suspected the data had been falsified. Dkt. 31, ¶¶ 26–27. Butler reported this finding to Harker, who advised her to contact the District's Director of Special Services, Pamela Sanford. *Id.* Sanford reviewed the notebooks and found additional data discrepancies, including data that had been recorded for student IEP goals that had not yet been created and data that was unrelated to the IEP goals of the students for whom it was collected. Dkt. 32, ¶ 3.

In June 2019, Harker requested an interview with Plaintiff to discuss her alleged falsification of student records. Dkt. 30, ¶ 4. Butler, Sanford, and Plaintiff's union representative were also present at the interview. *Id.* During the interview, Plaintiff admitted to falsifying a student's IEP by documenting that she had contacted the parent about an amendment to the IEP when she had not. Dkt. 31, ¶ 27. When asked about the

data discrepancies in the Styer notebooks, Plaintiff could not explain why the dates were inaccurate and indicated that she must have recorded the dates in error. *Id.* She likewise could not explain the discrepancies with the IEP goals. Dkt. 32-1 at 14.

On June 13, 2019, Harker sent Butler a letter to deliver to Plaintiff notifying her that the District was placing her on administrative leave pending an investigation into her alleged falsification of student records. Dkt. 30, ¶ 5. Harker also asked Sanford to review and investigate the allegations against Plaintiff, including Copeland's complaint and the concerns regarding the special education files for Plaintiff's students. *Id.* Butler then evaluated Plaintiff's job performance as Level 1: Unsatisfactory. Dkt. 31, ¶ 28; *see also* Dkt. 31-2 at 7–11. In a rebuttal to her evaluation, Plaintiff attributed her low rating to discrimination by Butler. Dkt. 31, ¶ 28; *see also* Dkt. 31-2 at 13–16. Butler left the Port Angeles School District shortly thereafter to start a new job with the North Shore School District on July 1, 2019. Dkt. 31, ¶ 28.

On September 6, 2019, Plaintiff filed a formal complaint with the District, alleging that Butler, Reifenstahl, the District's special education instructional coach, and another paraprofessional had discriminated against her on the basis of her sexual orientation. Dkt. 30, ¶ 6. On September 9, 2019, Sanford produced a draft report detailing the findings of her investigation into Plaintiff, which highlighted several additional data discrepancies. *Id.* ¶ 7. On September 13, 2019, Harker met with Plaintiff and her partner to discuss her complaint with the District. *Id.* ¶ 6. He also contacted the District's legal counsel, who arranged to hire an outside investigator to investigate Plaintiff's claims. *Id.* Plaintiff then filed a charge of discrimination with the Seattle office of the Equal Employment

Opportunity Commission ("EEOC") on September 19, 2019. Dkt. 1, ¶ 4.78. On October 8, 2019, the District received a Notice of Charge of Discrimination from the EEOC. Dkt. 30, ¶ 8.

Sanford completed her final report on October 14, 2019. Dkt. 32, ¶ 9. The final report concluded that Plaintiff had falsified student records on multiple occasions and that she had committed professional ethics violations. *Id.*; Dkt. 32-1 at 16. Sanford submitted her final report to Harker and the District's Superintendent, Martin Brewer. Dkt. 32, ¶ 9. Brewer determined that he had sufficiently reliable information to conclude that Plaintiff had falsified student records. Dkt. 29, ¶ 7. Further, because he believed that Plaintiff had committed acts of unprofessional conduct by falsifying student records in violation of Washington law, Brewer referred charges against Plaintiff to the Office of the Superintendent of Public Instruction and the Superintendent's Office of Professional Practices ("OPP"). *Id* ¶ 8. Brewer then terminated Plaintiff's employment with the District on February 18, 2020. *Id.* ¶ 11.

In May 2020, OPP found insufficient evidence to conclude that Plaintiff had violated the code of professional conduct and dismissed the charges against her. *Id.* ¶ 13; *see also* Dkt. 29-1 at 8–9. OPP based its finding in part on the fact that the data sheets Plaintiff allegedly falsified were not official IEP documents and thus not student records. Dkt. 29-1 at 9.

Plaintiff commenced this lawsuit against the District, Butler, and Reifenstahl in May 2020. Dkt. 1. After Plaintiff filed suit, Harker received a number of job reference emails from other Washington school districts asking questions about Plaintiff's daily

work habits and asking whether he would rehire Plaintiff. Dkt. 30, ¶ 12. He asserts that he chose not to respond because he could not answer substantive questions about her teaching and believed he would compromise her chances of getting a job if he answered honestly. *Id.* ¶ 13. Harker also received phone calls from two school districts asking if he would rehire Plaintiff, and he responded that he would not. *Id.* ¶ 14.

Defendants moved for summary judgment to dismiss all of Plaintiff's claims, Dkt. 28, and Plaintiff moved for partial summary judgment to dismiss all of Defendants' affirmative defenses, Dkt. 35. Judge Vaughan issued the instant R&R, recommending that the Court grant in part and deny in part Defendants' motion. Dkt. 60. The R&R recommends that Plaintiff's hostile work environment and disparate treatment claims under Title VII and WLAD be dismissed with prejudice, as well as Plaintiff's Title VII and WLAD retaliation claim predicated on her termination, the District's referral of charges against her to OPP, the District's refusal to give her job references, and Butler's final negative performance evaluation. *Id.* The R&R concluded that Plaintiff should only be permitted to maintain her Title VII and WLAD retaliation claims predicated on the District's dissemination of negative job references.[2] *Id.* The R&R also recommends that the Court deny Plaintiff's motion for partial summary judgment on Defendants' affirmative defenses. *Id.*

---

[2] The Court dismissed Reifenstahl as a party on May 25, 2021, Dkt. 39, and the R&R recommends dismissing Butler as a party because Plaintiff's only remaining claim does not implicate Butler, *see* Dkt. 60 at 43–44.

1        The parties both object to the R&R. *See* Dkts. 61, 62. Plaintiff objects to the

2  recommendations that her discrimination claim should be dismissed with prejudice and

3  that her retaliation claim should be narrowed. Dkt. 61. Defendants object to the

4  recommendation to deny their motion for summary judgment on Plaintiff's Title VII and

5  WLAD retaliation claims predicated on the District's dissemination of negative job

6  references. Dkt. 62.

## II. DISCUSSION

8        The district judge must determine de novo any part of the magistrate judge's

9  disposition that has been properly objected to. The district judge may accept, reject, or

10  modify the recommended disposition; receive further evidence; or return the matter to the

11  magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

12  **A.    Discrimination Claims**

13        Both Title VII and WLAD prohibit discharge or discrimination in the terms or

14  conditions of employment because of sexual orientation. 42 U.S.C. § 2000e-2(a)(1);

15  RCW 49.60.030(1); *see also Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).

16  This prohibition gives rise to two types of discrimination claims: hostile work

17  environment and disparate treatment. Defendants construed Plaintiff's complaint to bring

18  both type of claims, *see* Dkt. 28 at 7–17, and the R&R recommends that summary

19  judgment be granted for both claims, *see* Dkt. 60 at 16–20 (hostile work environment),

20  20–36 (disparate treatment).

21        Plaintiff appears to only object to the R&R's recommendation to grant summary

22  judgment on her Title VII and WLAD disparate treatment claims, though she does not

explicitly state as much. *See* Dkt. 61 at 2–10. To establish a prima facie disparate treatment claim, a plaintiff "must show that [her] employer simply treats some people less favorably than others because of their protected status." *Alonso v. Qwest Commc'ns Co.*, 178 Wn. App. 734, 743 (2013) (citing *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 226 (1996)). Under the *McDonnell Douglas* standard, a plaintiff must first offer proof that: (1) she belongs to a class of persons protected by Title VII and WLAD; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly situated employee who does not belong to the same protected class. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Scrivner v. Clark Coll.*, 181 Wn.2d 439, 445 (2014) (en banc) ("Where a plaintiff lacks direct evidence, Washington courts use the burden-shifting analysis articulated in *McDonnell Douglas* . . . to determine the proper order and nature of proof for summary judgment." (internal citations omitted)).

"Once a prima facie case has been made, the burden of production shifts to the defendant, who must offer evidence that the adverse action was taken for other than impermissibly discriminatory reasons." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). If the defendant satisfies this burden, the presumption of unlawful discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993). The plaintiff must then "demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985).

Plaintiff's objections misinterpret this standard. For example, she takes issue with the fact that the R&R "require[d] that Plaintiff challenge the District's state of mind regarding its 'belief' that Plaintiff falsified student records" while the District "is not required to establish Plaintiff's state of mind." Dkt. 61 at 4. The *McDonell Douglas* standard shifts the burden between the employee and the employer; the employer-defendant must only "articulate a legitimate nondiscriminatory reason for its employment decision." *Lowe*, 775 F.2d at 1005. The burden then shifts back to the employee-plaintiff to demonstrate pretext. *Id.* It *is* Plaintiff's burden to provide evidence from which a reasonable factfinder could find pretext at the summary judgment stage, despite her arguments otherwise. *See* Dkt. 61 at 4 n.1. A genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). But the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Turning to Plaintiff's objections regarding pretext with this proper standard in mind, the Court agrees with the R&R's thorough analysis that Plaintiff failed to establish pretext for her disparate treatment claim. *See* Dkt. 60 at 24–36. Her objections are essentially based on the same arguments previously raised in response to Defendants' motion for summary judgment and fail to explain how the R&R erred. For example, Plaintiff argues that her evidence demonstrates that the District's position for her

termination (i.e., that she falsified student records) was pretext because the data sheets were not student records, supported by OPP's dismissal of the charge against her. Dkt. 61 at 3. But the R&R considered this exact argument in discussing whether Defendants' legitimate nondiscriminatory reason for her termination is pretext. *See* Dkt. 60 at 25–27. Objections to a R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the magistrate judge. *See, e.g.*, *Fix v. Hartford Life & Accident Ins. Co.*, CV 16–41–M–DLC–JCL, 2017 WL 2721168, at *1 (D. Mont. June 23, 2017) (collecting cases).

The Court thus agrees with the R&R that Plaintiff has failed to show pretext by demonstrating that Defendants' proffered reason for her termination is unworthy of credence or by demonstrating that a discriminatory reason more likely motivated her termination. Plaintiff's arguments in response to the motion for summary judgment and her objections do not provide non-conclusory evidence that the District's reasoning for her termination is pretext for another discriminatory motive. The R&R is therefore adopted as to this issue.

**B.     Retaliation Claims**

To establish a prima facie claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). An adverse employment action is defined broadly, as any action

1  "reasonably likely to deter employees from engaging in protected activity.'" *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000).

"Once a plaintiff has made the threshold prima facie showing, the defendant must articulate a legitimate, non-retaliatory reason for the challenged action." *Emeldi v. Univ. of Ore.*, 673 F.3d 1218, 1224 (9th Cir. 2012) (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). "If the defendant does so, the plaintiff must then 'show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Davis*, 520 F.3d at 1089). "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001).

Plaintiff objects to the R&R's recommendation to limit her Title VII and WLAD retaliation claims. Dkt. 61. Defendants' objections are inverse; they object to the recommendation to deny their motion as to Plaintiff's retaliation claim predicated on the District's dissemination of negative job references. Dkt. 62.

**1. Plaintiff's Objections**

Plaintiff objects to the R&R's recommendation that her Title VII and WLAD retaliation claims be limited only to the District's dissemination of negative job references. Dkt. 61 at 10–13. But her objections fail to explain how the R&R specifically erred. A proper objection requires specific written objections to the findings and recommendations in the R&R. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

Cir. 2003) (en banc). "Courts are not obligated to review vague or generalized objections to an R&R; a petitioner must provide specific written objections." *Ybarra v. Martel*, No. 09cv1188-LAB (AJB), 2011 WL 613380, at *1 (S.D. Cal. Feb. 11, 2011).

It appears that Plaintiff objects to the R&R's determination that she satisfied her prima facie burden as to the first two elements of her retaliation claim by alleging that she was terminated, referred to OPP, and given negative job references. Though not explicitly stated, Plaintiff asserts that Butler's 2019 final performance review, being placed on administrative leave, being terminated, and the District's refusal to provide any form of job reference all amount to adverse employment actions because these actions would likely reasonably deter employees from engaging in protected activity.

Plaintiff raises this argument for the first time in her objections, and Defendants argue that her objections should be reviewed under the clear error standard. Dkt. 66. The Court has discretion to consider new arguments raised for the time in objections to an R&R. *See Brown v. Roe*, 279 F.3d 742, 745–46 (9th Cir. 2002) (rejecting the Fourth Circuit's holding that a district court must consider new arguments raised for the first time in an objection to a magistrate judge's R&R); *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000) (district courts have discretion to consider new evidence raised for the first time in an objection to a magistrate judge's R&R); *Olmos v. Ryan*, No. CV-11-00344-PHX-GMS, 2013 WL 3199831, at *8 (D. Ariz. June 24, 2013) ("Generally, a district court need not consider new arguments raised for the first time in objections to an R & R.").

1    The Court will consider these new arguments here, but they do not change the outcome. Plaintiff's objections do not explain how Butler's 2019 final performance review, being placed on administrative leave, being terminated, or the District's refusal to provide any form of job reference would reasonably deter an employee from engaging in protected activity. Rather, her objections are conclusory, arguing that Butler's 2019 evaluation was "retaliatory on its face." Dkt. 61 at 11. Merely asserting that whether the actions she challenges constitute materially adverse actions is for the jury to decide does not create a dispute of fact. A nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Plaintiff has failed to meet her burden here, and summary judgment on this issue is appropriate.

**2. Defendants' Objections**

Defendants, on the other hand, argue that Plaintiff has not established the prima facie elements of a retaliation claim predicated upon the District's dissemination of negative job references and that the R&R erred in disregarding their affirmative defense under RCW 4.24.730.[3] Dkt. 62.

First, Defendants argue that the R&R erred in concluding that there is sufficient evidence of pretext. The Court agrees with the R&R. Harker testified that he received phone calls from two school districts asking him if the District would rehire Plaintiff, to

---

[3] Plaintiff's response to Defendants' objections raises new arguments regarding her discrimination claim and her retaliation claim. The Court will only consider her arguments properly raised in her own objections.

1   which he responded that it would not. Harker also testified that one of the reasons he
2   would not rehire Plaintiff was because she had filed the instant lawsuit. *See* Dkt. 50-1 at
3   21:20–25:16. While the District has articulated a legitimate, non-discriminatory reason
4   for the negative job references (i.e., that Plaintiff falsified student records), Harker
5   seemingly conceded to retaliating against Plaintiff because she engaged in protected
6   activity. The District's proffered reason for the negative job references is arguably
7   unworthy of credence because of Harker's testimony. The R&R correctly determined that
8   there is a question of fact as to whether the District's nonretaliatory reason for Plaintiff's
9   references is a pretext.
10      Next, Defendants object to the R&R's conclusion that Plaintiff had established
11  causation for her narrowed retaliation claim. To establish causation, a plaintiff must
12  "present evidence sufficient to raise the inference that her protected activity was the
13  likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th
14  Cir. 1982) (internal citations omitted). Defendants argue that there is no evidence that
15  Harker actually stated to the callers that the reason the District would not rehire Plaintiff
16  is because she is suing the District. But Defendants do not provide any authority to
17  support the argument that the offending actor's retaliation must be overt or direct. Rather,
18  Harker's testimony that he would not rehire Plaintiff because she filed this lawsuit
19  supports an inference that Plaintiff's protected activity was the likely reason for the
20  adverse action. The Court thus agrees with the R&R that Plaintiff established a prima
21  facie case of retaliation predicated upon the District's dissemination of negative job
22  references.

1    Finally, Defendants argue that the R&R erred in disregarding the affirmative

2 defense under RCW 4.24.730. Defendants are correct that the R&R failed to consider this

3 argument, and the Court will consider it for the first time here. RCW 4.24.730 provides

4 that:

5    An employer who discloses information about a former or current
     employee to a prospective employer, or employment agency as defined by
6    RCW 49.60.040, at the specific request of that individual employer or
     employment agency, is presumed to be acting in good faith and is immune
7    from civil and criminal liability for such disclosure or its consequences if
     the disclosed information relates to: (a) The employee's ability to perform
8    his or her job; (b) the diligence, skill, or reliability with which the employee
     carried out the duties of his or her job; or (c) any illegal or wrongful act
9    committed by the employee when related to the duties of his or her job.

10 RCW 4.24.730(1). The presumption of good faith established under this statute "may

11 only be rebutted upon a showing by clear and convincing evidence that the information

12 disclosed by the employer was knowingly false, deliberately misleading, or made with

13 reckless disregard for the truth." RCW 4.24.730(3).

14    It is not clear to the Court that this affirmative defense is applicable here because

15 Defendants have not shown that the District (or Harker) ever disclosed *information* about

16 Plaintiff. Harker declares that he received phone calls from two school districts asking if

17 the district would rehire Plaintiff, and he responded that it would not. Dkt. 30, ¶ 14.

18 Based on the evidence presented in Defendants' motion for summary judgment, the Court

19 cannot conclude that RCW 4.24.730 is applicable to Plaintiff's retaliation claim, though

20 Defendants will not be precluded from asserting this defense at trial.

21    In conclusion, neither of the parties' arguments alter the Court's conclusion on

22 Plaintiff's retaliation claim. The R&R is therefore adopted on these issues.

## C. ORDER

The Court having considered the R&R, Plaintiff's objections, Defendants' objections, and the remaining record, does hereby find and order as follows:

(1) The R&R is **ADOPTED**;

(2) Defendants' motion for summary judgment, Dkt. 28, is **GRANTED in part** and **DENIED in part**;

(3) Plaintiff's motion for partial summary judgment, Dkt. 35, is **DENIED**;

(4) The Clerk shall terminate Defendants Amity Butler and Patricia Reifenstahl as parties; and

(5) The referral to Judge Vaughan is terminated, and the parties shall submit a joint status report no later than March 28, 2022 regarding trial length and availability.

Dated this 1st day of March, 2022.

BENJAMIN H. SETTLE
United States District Judge